CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 24 2006

JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| JANET HILTON-WILLIAMS, ) | |
| ) | |
| Plaintiff, ) | Civil Action No. 7:05cv00674 |
| ) | |
| v. ) | |
| ) | By: Michael F. Urbanski |
| JO ANNE B. BARNHART, ) | United States Magistrate Judge |
| COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

Plaintiff Janet Hilton-Williams ("Williams") brought this action pursuant to 42 U.S.C. § 405(g) for review of the decision of the Commissioner of Social Security denying Williams' claim for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433 ("Act"). The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on the defendant's motion for summary judgment. Having reviewed the record and after briefing and oral argument, the court finds that there is substantial evidence to support the Commissioner's decision. As such, defendant's motion for summary judgment must be granted and this appeal dismissed.

### I.

Williams was born on November 16, 1952, and completed one year of college after receiving her general equivalency diploma. (Administrative Record, hereinafter "R.," at 67, 77, 128) Williams' previous work includes that of a nurse's aide, furniture factory assembler/laborer, and die finisher. (R. 73) Williams filed an application for DIB with a protective filing date of

1

October 23, 2003, alleging that she became disabled on September 25, 2003, due to painful swelling in her legs from type II diabetes mellitus ("DM"), peripheral neuropathy, and incontinence. (R. 16, 40, 72, 91, 246) Williams' claims were denied at both the initial and reconsideration levels of administrative review, (R. 15), and a hearing was held before an administrative law judge ("ALJ") on April 13, 2004. (R. 268-305) On May 17, 2005, the ALJ issued a decision denying Williams' claims for DIB, finding that Williams retained the residual functional capacity ("RFC") to perform a limited range of light work in jobs that would permit her to change her position every 30-45 minutes. (R. 20) The ALJ also determined that Williams' medical problems did not prevent her from performing her past relevant work. (R. 20)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on September 2, 2005, when the Appeals Council denied Williams' request for review. (R. 7-10) Williams then filed this action challenging the Commissioner's decision.

## II.

Williams requests that the decision of the Commissioner be reversed or, in the alternative, remanded. (Br. Supp. Pl. at 4) Specifically, Williams argues that the ALJ failed to give full consideration to the cumulative impact of Williams' ailments and her testimony regarding her pain and discomfort, thus resulting in an erroneous finding that she retained the RFC for a limited range of light exertional work with a sit/stand option. (Br. Supp. Pl. at 1, 3) She also contends that the ALJ erred by finding that she could return to her past relevant work. (Br. Supp. Pl. at 1, 3) Finally, Williams claims that the Commissioner made an unsupported determination that she was not fully credible and failed to detail any substantial evidence to that effect. (Br. Supp. Pl. at 4)

2

The Commissioner contends that substantial evidence supports the ALJ's determination that Williams was not disabled. (Def.'s Summ. J. at 5-6) The Commissioner claims that Williams failed to establish that she was medically impaired and that she lacked the RFC to work. (Def.'s Summ. J. at 4-5) Additionally, the Commissioner argues that the ALJ's determination that Williams retained the RFC to perform a limited range of light work and her past relevant work is amply supported by treating physicians' opinions, the lack of any evidence of functional impairment, and Williams' credibility problems. (Def.'s Summ. J. at 2, 5, 11)

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that Williams failed to meet the conditions for entitlement established by and pursuant to the Act. See 42 U.S.C.A. § 405(g). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Stated briefly, substantial evidence is such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

### III.

Williams' position that the ALJ failed to review and consider the evidence as a whole is not supported by the record. That is likewise true as regards her contention that the ALJ erred by finding that she retained the RFC for a limited range of light exertional work.

When asked what problems interfered with her ability to work, Williams replied that her feet and legs "swell and they hurt constantly." (R. 291) She also said that a "second problem" was her "incontinence." (R. 282) At the hearing, the ALJ thoroughly questioned Williams on

3

these and other physical ailments. (R. 282-292) In response to the ALJ's questions, Williams stated that she could stand 30-45 minutes, that she could walk approximately a quarter of a mile, and that she could carry the weight of a twelve-pack of soda. (R. 283-284) Despite her assertion that the swelling and numbness in her legs completely prevented her from working, Williams participated in a variety of housework including cleaning, cooking, making beds, and washing clothes. (R. 287) She also testified that she was able to drive and go grocery shopping. (R. 287)

When questioned about her incontinence, Williams admitted that she was "able to function with protective clothing." (R. 282) Williams testified that while employed as a die finisher, she was able to take many unscheduled breaks to go to the restroom, often as many as six times in an eight hour shift. (R. 294) She also stated that her incontinence problems only caused her to leave work eight times over a three year period. (R. 293, 294)

The ALJ also considered documentary evidence from Williams' treating physicians in making his determination. (R. 16) Even though the primary conditions about which Williams complains are noted by her physicians, the record reveals that her symptoms are not so severe as to result in total disability. Appointment notes from Dr. Yusi-Lenn with the Tri-Area Health Clinic reveal that Williams had "no complaints except some non-specific knee pain" on October 1, 2002, and was "doing well" on her current medication on December 31, 2002. (R. 205-207) On May 22, 2003, Williams was examined by Dr. Ousley at the Hillsvale Family Care Center. (R. 182) He noted that although Williams had intermittent bladder trouble, she was not incontinent. (R. 182) He also briefly noted that Williams had joint pain in her knees. (R. 182, 196-200) On February 20, 2004, Williams again sought treatment from the Tri-Area Clinic with complaints of painful urination, dysuria, and urinary incontinence. (R. 256) Dr. Hubbard

4

prescribed a new medication and requested a follow-up examination in one month. (R. 256) During that exam on March 24, 2004, Williams complained of her "feet being painful," but gave no complaints of incontinence. (R. 255) Williams continued to visit the Tri-Area Clinic throughout 2004 and 2005 with complaints of bladder pressure, frequency, urgency, and incontinence after coughing or sneezing. (R. 250, 254) She also complained that her feet felt like they were "burning" and that her legs were "achy" and sometimes "numb." (R. 245, 249, 251, 253) At a March 21, 2005 examination, Dr. Hubbard diagnosed Williams with a viral syndrome and determined that the peripheral neuropathy Williams complained of was coincidental with the virus. (R. 249) During the exam, Williams reported that the medication prescribed through the Wake Forest Action to Control Cardiovascular Risk in Diabetes Study ("ACCORD") was having a positive effect on her diabetes and the corresponding symptoms. (R. 223-339, 245, 252, 253)

There are no opinions in the record from any health care provider stating that Williams is disabled. Throughout Williams' extensive medical history, no physician ever stated that Williams could not perform light exertional work. In fact, many physicians strongly suggested that she increase her physical activity. (R. 181, 184) While the court recognizes that Williams was diagnosed with DM and that much of Williams' physical discomfort likely results from this illness, it is well-established that a mere diagnosis of a condition is not enough to prove disability. (R. 205) See Gross v. Heckler, 785 F.2d 1163 (4th Cir. 1986); See also Hutton v. Apfel, 175 F.3d 651, 655 (8th Cir. 1999) (finding that a lack of physical restrictions from a treating source tends against a finding of total disability).

It is clear that the ALJ reviewed and considered the evidence as a whole and Williams' impairments in relation to one another in finding that she is not disabled and that she retained the

5

RFC for a limited range of light exertional work. The ALJ's thorough questioning of Williams during the hearing regarding her ailments and his attention to her medical records demonstrates that he considered every aspect of her claim.

Furthermore, the court finds substantial evidence in the record to support the ALJ's determination that Williams retained the RFC for a limited range of light exertional work. As previously noted, Williams' medical records do not support her claim that she is unable to perform light exertional work. None of her physicians have found that she is disabled or that her ailments prevent her from working. Further, Williams concedes that she was able to work, despite her ailments, with few missed days. (R. 294) The Social Security Regulations provide that Williams has the obligation to bring to the Agency's attention everything that shows that she is disabled. See 20 C.F.R. §§ 404.704, 404.1512(a). No such evidence has been provided. Therefore, the court finds that the ALJ's determination that Williams is not disabled and that she retained the RFC for a limited range of light exertional work is supported by the record.

## IV.

Williams' contention that the ALJ erred by finding that she could return to her past relevant work is not supported by the record. In addition to questioning Williams and considering her treating physicians' opinions, hypothetical questions were fully explored on the record with the vocational expert ("VE"). (R. 299-304) At the hearing, the ALJ asked the VE a hypothetical question concerning a limited range of light exertional work, specifically whether there were any jobs in the national economy that an individual could perform given the age, education, background, and experience of Williams, and who could perform light work while alternating sitting and standing. (R. 299-301, 303) In response, the VE testified that Williams

6

could perform a significant number of jobs in the national economy including that of a ward clerk, pharmacy technician, and a case aide. (R. 301-302) The VE further testified that the type of light work at issue included work as a die finisher, Williams' past relevant work. (R. 297)

The ALJ asked the VE another hypothetical question, specifically whether it would be problematic for continuing employment if that person needed to briefly use the restroom every 45 to 60 minutes. (R. 303) The VE responded in the negative. (R. 303) The VE also noted that a die finisher is not confined to any specific schedule and that unscheduled breaks to use the restroom are allowed. (R. 297, 299-301) Further, Williams confirmed that she was allowed to take unscheduled breaks at her previous job as a die finisher. (R. 294, 301) Williams was admittedly "able to function with protective clothing," and concedes that her problems with incontinence rarely caused her to miss work. (R. 282, 294) Given the evidence in the record, including the VE's testimony, the court finds substantial evidence to support the ALJ's conclusion that Williams retained the RFC to do light exertional work, including her past relevant work. (R. 18-19)

## V.

Finally, Williams' allegation that the Commissioner made an unsupported determination that she was not fully credible is not supported by the record. (Br. Supp. Pl. at 4) The ALJ is not required to accept Williams' subjective allegation that she is functionally unable to perform her past relevant work. In weighing a claimant's complaints, the ALJ must first determine, through an examination of the objective medical record, whether the claimant has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996). Then, the ALJ must determine whether the claimant's

7

statements about her symptoms are credible in light of the entire record. (R. 286-291)

Here, the ALJ found that Williams' allegations were not entirely credible based on her daily activities, medical records, the fact that she admitted requesting medical assistance to complete her disability application, and her voluntary resignation. (R. 16, 18) The ALJ determined that Williams had medical conditions that could cause the symptoms alleged, but that Williams' symptoms were not so severe as to "significantly restrict her activities of daily living or ability to work in some capacity." (R. 16, 18, 286-291) Williams testified that she read novels, worked search word puzzles, and watched many television programs daily. (R. 286, 288, 291) Further, she stated that she did a variety of housework including cleaning, cooking, making beds, and washing clothes and that she was able to drive and go grocery shopping. (R. 287)

Williams' medical records reveal that on September 2, 2003, during a follow-up visit with Dr. Creed, Williams informed him that she "wanted help getting disability." (R. 177) Soon after this visit, Williams voluntarily quit her job. (R. 276, 279) When questioned as to why she voluntarily resigned her position as a die finisher, Williams replied that she was "out sick alot" because of bladder infections and she was "afraid [she] was going to get fired." (R. 276) In support of her decision to resign, Williams points to the fact that the VE testified that being absent one to two days a week would most likely result in termination. (R. 304) However, Williams never received a termination notice, nor was she ever threatened with discharge. (R. 279) Additionally, Williams testified that since starting treatment her rate of bladder infections had significantly decreased, thus suggesting that it is unlikely that she would be excessively absent. (R. 294)

8

Williams' medical records and testimony about her daily activities certainly raise an issue as to the veracity of her complaints of total disability. See Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994) (holding that a claimant's daily activities can suggest he is not disabled). The ALJ's credibility determinations are entitled to deference, and the court finds no reason to disturb the ALJ's determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight).

## VI.

Given the deferential standard of review under 42 U.S.C. § 405(g), the court must affirm the decision of the ALJ. The court finds that there is more than enough evidence to support the conclusion that Williams was not disabled as defined under the Social Security Act. See Pierce v. Underwood, 407 U.S. 552, 565 (1988); King v. Califano, 559 F.2d 597, 599 (4th Cir. 1979). As such, defendant's motion for summary judgment is granted.

In affirming the final decision of the Commissioner, the court does not suggest that Williams is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the subjective factors in adjudicating Williams' claims for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. An order dismissing this action will be entered.

The Clerk of Court is hereby directed to send a certified copy of this opinion to all counsel of record.

**ENTER:** This 24th day of October, 2006.

                                                Michael F. Urbanski
                                                United States Magistrate Judge